# EXHIBIT A

**LOCKS LAW FIRM**
**ANDREW J. DUPONT, ESQUIRE**
**ATTORNEY I.D. NO.: 91305**
**SHRICE C. WALLACE, ESQUIRE**
**ATTORNEY I.D. NO.: 201511**
**THE CURTIS CENTER, SUITE 720E**
**601 WALNUT STREET**
**PHILADELPHIA, PA 19106**
adupont@lockslaw.com
swallace@lockslaw.com
**T (215) 893-0100**
**F (215) 893-3444**

**THIS IS A MAJOR JURY TRIAL.**
**ASSESSMENT OF DAMAGES CASE.**
**HEARING IS REQUIRED.**

**ATTORNEYS FOR PLAINTIFFS**

*Filed and Attested by the*
*Office of Judicial Records*
*07 OCT 2024 09:46 am*
*L. BREWINGTON*

---

| | |
|---|---|
| **DOMINIC GENTILE and** : | **COURT OF COMMON PLEAS** |
| **JANET GENTILE, h/w** : | **PHILADELPHIA COUNTY** |
| **2386 Sumatran Way #58** : | |
| **Clearwater, FL 33763** : | |
| : | **JURY TRIAL DEMANDED** |
| **Plaintiffs,** : | |
| : | **OCTOBER TERM, 2024** |
| **vs.** : | |
| : | **No:** |
| **BRIDGESTONE AMERICAS TIRE** : | |
| **OPERATIONS, LLC, f/k/a Bridgestone** : | |
| **Firestone North American Tire, LLC,** : | |
| **Successor-in-Interest to Bridgestone/Firestone,** : | |
| **Inc., Successor-in-Interest to Firestone Tire &** : | |
| **Rubber Company** : | |
| **200 4th Avenue South** : | |
| **Nashville, TN 37201** : | |
| : | |
| **EXXON MOBIL CORPORATION,** : | |
| **Successor-in-Interest to Exxon Corporation and** : | |
| **Mobil Oil Corporation** : | |
| **22777 Springwoods Village Parkway** : | |
| **Spring, TX 77389** : | |
| : | |
| **ENERGY TRANSFER (R&M), LLC, f/k/a** : | |
| **SUNOCO, LLC (R&M) f/k/a** : | |
| **Sunoco, Inc. (R&M) f/k/a Sun Company, Inc.** : | |
| **and f/k/a/ Sun Oil Company, Inc.** : | |
| **3801 West Chester Pike** : | |
| **Newtown Square, PA 19073** : | |
| : | |
| : | |
| : | |
| : | |

**ASHLAND, INC f/k/a Ashland, LLC,**                               :
**Successor-in-Interest to Ashland, Inc. f/k/a**                   :
**Ashland Oil, Inc., a Kentucky corporation**                     :
**8145 Blazer Drive**                                             :
**Wilmington, DE 19808**                                          :
                                                                  :
**UNION OIL COMPANY OF CALIFORNIA**                               :
**d/b/a Unocal and AMSCO, Individually and as**                   :
**Successor in Interest to American Mineral**                     :
**Spirits Company a/k/a AMSCO**                                   :
**PO Box 6028**                                                   :
**San Ramon, CA 94583**                                           :
                                                                  :
**PRESTIGE WELDERS, INC. d/b/a**                                  :
**Eastern Car Construction Company**                              :
**70 S. Franklin Street**                                         :
**Pottstown, PA 19464**                                           :
                                                                  :
       **Defendants.**          :
                                                                  :

---

## PLAINTIFFS' COMPLAINT

### NOTICE TO PLEAD
#### CODE 2T

You have been sued in this Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defense objections to the claims set forth against you.

You are warned that if you fail to do so, the case may proceed the Court without further notice for any money claims in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

Le han demandado a usted en la corte. Si desea defenderse Contra las quejas presentadas es absolutamente necesario que usted responda dentro de 20 dias despues de ser servideo Con esta demanda y aviso. Para defenderse, es necesario que used, o su abogado, registre con la corte en forma escrita, el punto de vista de usted y cualquier objeccion contra las quejas en esta demanda.without you, and a judgment may be entered against you by Recuerde: Si usted no reponde a esta demanda, se puede proseguir con el processo sin su participacion. Entonces, la corte puede, sin notificarlo, decidir a favor del demandante y requerira que usted cumpla con todas las provisiones de esta demanda. Por razon De esa decision, es posible que Usted pueda perder dinero, propiedad o estros derechos importantes.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENET. SI NO TIENE ABOGADO O SI NOTIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PAPA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

SOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia e Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-1701

2

Case ID: 241001674

**LOCKS LAW FIRM**
**ANDREW J. DUPONT, ESQUIRE**
**ATTORNEY I.D. NO.: 91305**
**SHRICE C. WALLACE, ESQUIRE**
**ATTORNEY I.D. NO.: 201511**
**THE CURTIS CENTER, SUITE 720E**
**601 WALNUT STREET**
**PHILADELPHIA, PA 19106**
**adupont@lockslaw.com**
**swallace@lockslaw.com**
**T (215) 893-0100**
**F (215) 893-3444**

**THIS IS A MAJOR JURY TRIAL. AN ASSESSMENT OF DAMAGES HEARING IS REQUIRED.**

**ATTORNEYS FOR PLAINTIFFS**

| | | |
|---|---|---|
| **DOMINIC GENTILE and** | : | |
| **JANET GENTILE, h/w** | : | **COURT OF COMMON PLEAS** |
| **2386 Sumatran Way #58** | : | **PHILADELPHIA COUNTY** |
| **Clearwater, FL 33763** | : | |
| | : | **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | : | |
| | : | **OCTOBER TERM, 2024** |
| **vs.** | : | |
| | : | **No:** |
| **BRIDGESTONE AMERICAS TIRE** | : | |
| **OPERATIONS, LLC, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## PLAINTIFFS' COMPLAINT

## CODE 2T

## JURISDICTION AND VENUE

1.    Jurisdiction is conferred upon this Court pursuant to 42 Pa.C.S. §5301, since every

Defendant continuously and systematically conducts and/or transacts a part of its general business

within the Commonwealth of Pennsylvania and the County of Philadelphia, and/or is incorporated

under or qualified as a foreign corporation under the laws of this Commonwealth. Specific

jurisdiction exists over each and every Defendant because Plaintiff was exposed to their benzene

3

Case ID: 241001674

containing products in Pennsylvania or was employed by them in Pennsylvania, and thus committed tortious conduct contributing to the Plaintiffs' causes of action in Pennsylvania. This court also has general personal jurisdiction over those Defendant that are organized under the laws of Pennsylvania, have a principal place of business in Pennsylvania, or that have registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)-(ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f).

2.     Venue in this Court is proper pursuant to Pa.R.C.P. 1006 and Pa.R.C.P. 2179, since every Defendant regularly conducts business within the County of Philadelphia, and transactions and occurrences out of which the cause of action arose occurred in Philadelphia County, and because Defendants made tortious decisions, acts and omissions with regards to the manufacture, sale, design, marketing and warnings for the benzene–containing products and/or acted in conspiracy with other Defendants located within Philadelphia County. Venue is also proper, in addition to other reasons averred herein, because SUNOCO, INC. (R&M) during times relevant hereto maintained, its corporate headquarters within the City and County of Philadelphia and operated two refineries within the City and County of Philadelphia, where, upon information and belief, gasoline that Plaintiff was exposed to.

## FACTS COMMON TO ALL COUNTS

3.     Dominic Gentile ("Plaintiff") resides at the above stated address. Janet Gentile, at all times material hereto was the wife of Dominic Gentile and resides at the above stated address.

4.     At all times material hereto, Plaintiff was employed by the following employers (hereinafter "employer") where he was exposed to benzene and benzene-containing products,

Case ID: 241001674

including those manufactured, distributed, marketed, sold and supplied by Exxon Mobil Corporation, Sunoco, Union Oil Company of California and Ashland.

a) Firestone, Firestone Boulevard, Pottstown, PA 1965-1980

b) Esso Gasoline Service Station, Bridge Street, Phoenixville, PA 1956 - 1958

c) Sunoco Gasoline Service Station, High Street & Berk Street, Pottstown, PA 1976 – 1980

d) Prestige Welders, Inc. d/b/a Eastern Car Construction, Pottstown Industrial Park, Keim Street, Pottstown, PA 1981 - 1990

5.      As a condition of his work, Plaintiff worked directly and indirectly with and around, and was directly and indirectly exposed to, on a daily or almost daily basis, benzene and various benzene-containing products, including but not limited to, solvents and gasoline (hereinafter or "benzene-containing products") which products were manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce by the Defendants.

6.      Plaintiff worked and was exposed upon premises owned by Sunoco and Exxon Mobil.

7.      Plaintiff was exposed to the Defendants' benzene-containing products, and to the vapors, aerosols, mists and fogs from said products, by means of inhalation and dermal absorption (from direct dermal contact with said products, dermal contact with clothes contaminated by said products and/or dermal contact with benzene vapors in the air.).

8.      As a direct and proximate result of his exposure to benzene and the benzene-containing products and the Defendants' wrongful conduct, Plaintiff was caused to contract

Case ID: 241001674

Myelodysplastic Syndrome. Plaintiff was diagnosed with Myelodysplastic Syndrome after September 20, 2024. Plaintiff has suffered multiple symptoms and side effects of his Myelodysplastic Syndrome and the treatments therefore.

## **DEFENDANTS**

9.      At all times material hereto, Defendants and Employer Defendants acted through their agents, ostensible agents, servants or employees, who were acting within the scope of their employment on the business of the Defendants and Employer Defendants. The Defendants and Employer Defendants' agents and ostensible agents included their employees and other persons and entities, since the Defendants and Employer Defendants are all corporations or other business entities that must act through their employees and others that the Plaintiffs are not able to identify by name without conducting discovery.

10.     The Defendants are all corporations, companies or other business entities which, during all times material hereto and for a time prior thereto, manufactured, produced, processed, compounded, converted, sold, distributed, marketed and/or otherwise placed into the stream of commerce, benzene-containing products and/or raw material ingredients used in benzene-containing products, all of which were used by and around Plaintiff and Plaintiff's employers, or are the successors to and/or otherwise liable for companies which engaged in said conduct.

11.     The Defendants and Employer Defendants are:

a)  BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, f/k/a Bridgestone Firestone North American Tire, LLC, Successor-in-Interest to Bridgestone/Firestone, Inc., Successor-in-Interest to Firestone Tire & Rubber Company (hereinafter "Firestone" or "Employer Defendant") upon

6

Case ID: 241001674

information and belief is a limited liability company organized and existing under the laws of the State of Delaware, having its a principal place of business at the above address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Employer Defendant because the Employer Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)- (ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court has specific jurisdiction over this Employer Defendant because it employed the Plaintiff in Pennsylvania and committed tortious conduct contributing to the Plaintiffs' causes of action in Pennsylvania.

Firestone is sued for employer negligence pursuant to *Tooey v. AK Steel Corp.*, 623 Pa. 60 (2013).

b) EXXON MOBIL CORPORATION, Successor-in-Interest to Exxon Corporation and Mobil Oil Corporation (hereinafter "Exxon Mobil" or "Defendant") upon information and belief, is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business at the above address, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the

7

Case ID: 241001674

Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)- (ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court has specific jurisdiction over this Defendant because it committed tortious acts in Pennsylvania which contributed to the Plaintiffs' causes of action, including because Plaintiff was exposed to benzene emitted from its benzene-containing gasoline in Pennsylvania.

Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Exxon Mobil manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products to which the Plaintiff was exposed, including but not limited to gasoline.

c)   ENERGY TRANSFER (R&M), LLC f/k/a Sunoco, LLC. (R&M) f/k/a Sunoco, Inc. (R&M) f/k/a Sun Company, Inc. and Sun Oil Company, Inc. (hereinafter "Sunoco" or "Defendant") upon information and belief, is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania, having its principal place of business at the above address, yet which had a principal place of business in the City and County of Philadelphia at times relevant hereto, and which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the City and County of Philadelphia.

8

Case ID: 241001674

Sunoco's corporate headquarters, during times relevant hereto, were located in the City and County of Philadelphia. Sunoco owned and operated and maintained a joint venture in no less than two refineries (the Girard Point Refinery and the Point Breeze Refinery) in the County of Philadelphia, where gasoline, benzene and benzene-containing solvent products were refined, including, upon information and belief, solvents used as ingredients in co-Defendants' products and gasoline, to which the Plaintiff was exposed. Sunoco tests products, including benzene and gasoline, in the City and County of Philadelphia. Sunoco wrote warnings and instructions for products, including benzene and gasoline in Philadelphia. Sunoco maintained documents and electronic information on the chemical properties and health hazards of gasoline, benzene and benzene-containing solvents in Philadelphia. Sunoco employees with knowledge of the above facts worked in Philadelphia.

Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Sunoco manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products to which the Plaintiff was exposed, including but not limited to gasoline.

d)  ASHLAND, INC. f/k/a Ashland, LLC, Successor-in-Interest to Ashland, Inc. f/k/a Ashland Oil, Inc., a Kentucky corporation (hereinafter "Ashland"

Case ID: 241001674

or "Defendant"), upon information and belief is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at the above-stated address, yet which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia. Ashland is a successor-by-merger to Ashland Inc. f/k/a Ashland Oil, Inc., a Kentucky corporation. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)- (ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court has specific jurisdiction over this Defendant because it committed tortious acts in Pennsylvania which contributed to the Plaintiffs' causes of action, including because Plaintiff was exposed to its benzene and/or benzene-containing solvents in Pennsylvania. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant Ashland manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, including but not limited to benzene and benzene-containing rubber solvents, to which the Plaintiff was exposed during the course of his work at Firestone.

e) UNION OIL COMPANY OF CALIFORNIA d/b/a/ Unocal, Individually

Case ID: 241001674

and as Successor in Interest to American Mineral Spirits Company (hereinafter "UNOCAL" or "Defendant") upon information and belief is a corporation organized and existing under the laws of the State of California, having its principal place of business at the above-stated address, which continuously, regularly and systematically conducts business in the Commonwealth of Pennsylvania and the County of Philadelphia. This court has general personal jurisdiction over the Defendant because the Defendant registered with the Pennsylvania Department of State and thereby consented to the general personal jurisdiction of Pennsylvania Courts pursuant to 42 Pa.C.S. § 5301(a)(2)(i)- (ii), 15 Pa.C.S. § 402(d) and 15 Pa.C.S. 376(f). This court has specific jurisdiction over this Defendant because it committed tortious acts in Pennsylvania which contributed to the Plaintiffs' causes of action, including because Plaintiff was exposed to its benzene and/or benzene-containing solvents in Pennsylvania. Benzene has been known to cause cancer since prior to 1964, there is no safe level of exposure to benzene and Defendant UNOCAL manufactured, refined, designed, produced, processed, compounded, converted, packaged, sold, distributed, marketed, re-labeled, supplied and/or otherwise placed into the stream of commerce benzene-containing products, benzene and benzene-containing rubber solvents, to which the Plaintiff was exposed during the course of his work at Firestone.

f)  PRESTIGE WELDERS, INC. d/b/a Eastern Car Construction Company

11

Case ID: 241001674

(hereinafter "Eastern Car" or "Employer Defendant") upon information and belief is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania having its principal place of business at the above-stated address.

Eastern Car is sued for employer negligence pursuant to *Tooey v. AK Steel Corp.*, 623 Pa. 60 (2013).

## COUNT I

## PLAINTIFFS VS. EXXON MOBIL, SUNOCO, ASHLAND AND UNOCAL

## NEGLIGENCE & GROSS NEGLIGENCE

12.     Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

13.     Defendants had a duty to independently and vigilantly protect against unreasonable health risks which may be posed by their products. Defendants' duty encompassed the complete lifecycle of their products from research, development and design, to manufacture, to marketing, sale and distribution of the products, and included a post-sale duty to warn. Their duty included a responsibility to eliminate the benzene from their products and, if elimination was not possible, to develop safer alternative products or at least minimize the benzene content of the products. Their duty included a responsibility to market their products in a manner that disclosed and reflected the true health hazards of their products. Their duty included a responsibility to disclose the information the possessed regarding the potential for benzene exposure and the health hazards of benzene so that regulatory agencies, employers and end users could make informed decisions as

12

Case ID: 241001674

to whether the products should be on the market, how the products should be used and whether the products should be used. Their duty included a responsibility to provide warnings of the products' risks that were adequate in their content, intensity and dissemination. It was the Defendants' obligation to provide warning with an intensity that would prompt a reasonable user to exercise caution commensurate with the potential danger and to disseminate those warnings in a manner that   reached the end user and was calculated to alert potential users of the risks and to avoid the likelihood that the warnings could become obscured

14.    Plaintiff used, worked with, around and in close proximity to, handled, inhaled, dermally absorbed, ingested and was otherwise directly and indirectly exposed to Defendants' benzene and benzene-containing products and/or vapors therefrom, during the ordinary, foreseeable and intended use of the Defendants' benzene and benzene-containing products.

15.    Defendants knew, or in the exercise of reasonable care, could and/or should have known that persons such as Plaintiff would use, worked with, around and in close proximity to, handled, inhaled, dermally absorbed, ingested and was otherwise directly and indirectly exposed to their benzene and benzene-containing products and/or vapors therefrom.

16.    Defendants knew, should and/or reasonably could have known that benzene causes blood and bone marrow poisoning and damage, damage to DNA, chromosome damage, cancer, leukemia and other blood and bone marrow disease and damage, and is otherwise extremely dangerous to human health.

17.    Defendants knew, should and/or could have reasonably known that their benzene-containing products contained benzene.

18.    Defendants knew, should and/or reasonably could have known that their benzene

13

Case ID: 241001674

and benzene-containing products were carcinogenic, leukemogenic, inherently defective, ultra-hazardous, dangerous, deleterious, poisonous and otherwise highly harmful to the body and health of Plaintiff and persons similarly situated.

19.     Plaintiff and similarly situated persons did not and could not know of the nature and extent of the danger to their bodies and health, including the risk for cancer and leukemia, caused by exposure to the Defendants' benzene and benzene-containing products and/or vapors therefrom.

20.     The Defendants knew, should and/or reasonably could have known that Plaintiff and other persons similarly situated, would come into direct and indirect contact with, handle, inhale, ingest, dermally absorb and otherwise be exposed to benzene during the ordinary and foreseeable use of said benzene and benzene-containing products.

21.     The Defendants knew, should and/or reasonably could have known that Plaintiff and other persons similarly situated did not know, understand or fully appreciate nature and extent of the danger to their bodies and health, including the risk for cancer and leukemia, caused by exposure to the Defendants' benzene and benzene-containing products and/or vapors therefrom.

22.     The Defendants had a duty to all consumers, workers and employers to exercise reasonable care in the creation, manufacturing, designing, formulating, refining, producing, processing, packaging, marketing, selling, warning, distributing and otherwise placing their respective benzene and benzene-containing products into the stream of commerce, including a duty to assure that the products did not pose a risk of injury, harm, disease and death, including cancer and leukemia.

23.     Defendants breached their duty and were negligent and grossly negligent because,

14

Case ID: 241001674

knowing all of the above, they:

      a.     Manufactured, produced, designed, formulated, processed, packaged, compounded, converted, sold, marketed, re-labeled, supplied, distributed and/or otherwise placed in the stream of commerce products benzene and benzene-containing products;

      b.     Failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their benzene and benzene-containing products contain benzene;

      c.     Failed to take precautions to warn and/or adequately warn Plaintiff and his employers of the dangers to their health, including the nature and extent thereof, caused by exposure to benzene and the benzene-containing products, including the risk for contracting leukemia;

      d.     Failed to take precautions to warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia, caused by working with and around the benzene and benzene-containing products;

      e.     Failed and omitted to place any warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the benzene and benzene-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the benzene and benzene-containing products to protect against the risk of dangers to health;

      f.     Continued to manufacture, produce, process, sell, market, distribute, supply and/or otherwise place into the stream of commerce known cancer-causing products, to-wit, benzene and benzene-containing products;

      g.     Failed and omitted to package the said chemical products so that, in the ordinary and foreseeable use and handling of them, Plaintiff and other persons similarly situated would not come into direct and indirect contact with, handle, inhale, dermally absorb and otherwise be exposed to benzene and benzene-containing products and/or vapors therefrom;

      h.     Failed and omitted to take all reasonable, necessary, proper and prudent measures to assure that all necessary warnings, notices and instructions as to the products' benzene content, leukemogenic, carcinogenic, deleterious, poisonous and

15

Case ID: 241001674

dangerous nature, and the reasonable and necessary safe guards and procedures for use in conjunction with the products, reached the actual end user, and were complied with by Plaintiff's employers and end users including Plaintiff and other persons similarly situated;

i.      Defendants knew, should and/or could have known that the failure to warn and/or adequately warn of the risks, dangers and harm created by exposure to the benzene and benzene-containing products, and the reasonably safe and sufficient precautions, practices, personal protective equipment, wearing apparel, appliances and engineering controls to use with the benzene and benzene-containing products, would act as an inducement to Plaintiff and other end users similarly situated to come into direct and indirect contact with, handle, inhale, dermally absorb and otherwise be exposed to benzene and benzene-containing products and/or vapors therefrom, without proper and adequate protection;

j.      Defendants failed to train and advise the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene and benzene-containing products, resulting in the creation of an atmosphere that the Defendants' benzene-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and otherwise be exposed to;

k.      Defendants knew, should and/or could have known, but also failed to take reasonable, sufficient and proper precautions reasonably calculated to recommend methods to improve the work environment, such as that of Plaintiff's employer, to which Defendants sold, marketed, distributed, supplied and/or otherwise placed into the stream of commerce, benzene and benzene-containing products;

l.      Failed to comply with all federal, state, local and trade statutes, codes, regulations and ordinances relating to warnings, labeling, benzene and the benzene content of their products, actions required to determine and analyze the hazardous nature of their products and the warnings and instructions accompanying same, including but not limited to the Federal Hazardous Substances Act, 29 CFR 1910.1200; 29 CFR 1910.1028; and, 49 CFR Parts 100-199;

m.      Failed to take all reasonable, necessary, proper and prudent measures to test their benzene-containing products to determine the products' benzene content and the quantity of benzene released into the breathing zone of the end user, and dermally absorbed by the end user, during the ordinary, intended and foreseeable use thereof;

n.      Failed to test their benzene and benzene-containing products for health hazards, including lymphohematopoietic disease;

Case ID: 241001674

o.     Failed to test the adequacy of labels, warnings and instructions appearing upon or distributed with their benzene and benzene-containing products;

p.     Failed to take all reasonable, necessary, proper and prudent measures to make their benzene and benzene-containing products safe for their intended and foreseeable use.

q.     Failed to properly and adequately manufacture, design, produce and process their products so as to eliminate all benzene content thereof;

r.     Failed to research, develop, design, manufacture, produce, market and sell safer alternative products, to wit products which did not contain benzene;

s.     Continued to manufacture and sell products containing benzene despite fully knowledge that there were safer alternative products;

t.     Continuing to manufacture and sell products containing benzene despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective;

u.     Failing to use vapor recovery systems and other engineering controls at their gasoline service station to prevent or minimize exposures to benzene from their gasoline;

v.     Failing to educate and train gasoline service station operators and workers as to the presence of benzene in their gasoline, the benzene of benzene in the workplace air, the health hazards of benzene exposure and the engineering controls and workplace practices necessary to protect against benzene exposure; and,

w.     For these reasons, Defendants grossly deviated from the ordinary standard of care.

24.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted and suffers from Myelodysplastic Syndrome, and multiple side effects, conditions, illnesses and symptoms caused by Myelodysplastic Syndrome and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection.

Case ID: 241001674

25.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

26.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future will suffer economic losses

27.    As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses will continue to accrue.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs prey for judgment from Defendants, individually, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest and delay damages.

## COUNT II

## PLAINTIFFS VS. EXXON MOBIL, SUNOCO, ASHLAND AND UNOCAL

## BREACH OF WARRANTY

28.    Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

29.    Defendants, individually, jointly and severally impliedly warranted, including under the Pennsylvania Uniform Commercial Code, to Plaintiff and other end users of their benzene and benzene-containing products, who were similarly situated, that the benzene benzene-containing products, were merchantable, reasonably fit and safe for their intended, stated and

Case ID: 241001674

described purpose and application, when in fact they were not. The implied warranty of merchantability is created by law and therefore there is no warranty to attach to this Complaint.

30. Defendants, individually, jointly and severally breached said warranties to Plaintiff, in that their benzene and benzene-containing products were inherently defective, ultra-hazardous, dangerous, deleterious, poisonous, carcinogenic, unfit for use, not properly merchantable and not safe, as marketed, for their foreseeable use and purpose, in that they contained benzene and caused lymphohematopoietic diseases, including Myelodysplastic Syndrome, aplastic anemia, leukemia and other blood cancers and blood diseases, were defectively designed and lacked warnings, instructions and training, or adequate and sufficient warnings, instructions and training, as more fully set forth in Counts I, III, IV, V and VI, and including because:

      a. They contained benzene and benzene causes cancer, leukemia and other harm to the blood and bone marrow of humans;

      b. The intended use of the products was not to cause cancer and blood disease;

      c. Products which cause cancer and blood disease are not merchantable products;

      d. They lacked all elements necessary to make them safe for their intended and foreseeable use;

      e. The Defendants failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their benzene-containing products contained benzene;

      f. They lacked warnings and instructions, and or adequate warnings and instructions, of the dangers to human health, including the nature and extent thereof, caused by exposure to benzene and the benzene-containing products, including the risk for contracting cancer, leukemia and other blood and bone marrow disease;

      g. They did not warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from

19

Case ID: 241001674

exposure to benzene and physical harm, including leukemia, caused by working with and around the benzene and benzene-containing products;

h.      There were no warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the benzene and benzene-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the benzene and benzene-containing products to protect against the risk of dangers to health;

i.      Failed to train and advise, or adequately train and advise, the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene and benzene-containing products, resulting in the creation of an atmosphere that the Defendants' benzene and benzene-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorb and otherwise be exposed to;

j.      Failed to train, communicate, publish, adopt and enforce a safety plan and a safe method of handling and working with their benzene and benzene-containing products;

k.      They failed to recommend methods to improve the work environment;

l.      The Defendants failed to develop alternative products, including products which did not contain benzene;

m.      The Defendants failed to assure that warnings, instructions, advisements, and training reached Plaintiff's employer, Plaintiff and other end users similarly situated, such that Plaintiff and other end users were adequately warned and protected, against the hazards posed by benzene, as contaminants in, or as ingredients of their benzene-containing products;

n.      The ordinary and foreseeable use of the Defendants' benzene and benzene-containing products, or those benzene-containing products of Defendants which were distributed to Plaintiff's employer, is an intrinsically dangerous and ultra hazardous activity;

o.      The Defendants' benzene-containing products were also defectively designed in that their hazards outweighed the benefit, if any, of the products' benzene content;

Case ID: 241001674

p.      The Defendants' benzene and benzene-containing products were defective in that they failed to meet their consumer's expectations for safety;

q.      Were packaged in a manner that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained;

r.      Contained directions for use that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained;

s.      Continued to manufacture and sell benzene and products containing benzene despite fully knowledge that there were safer alternative products; and,

t.      Continuing to manufacture and sell benzene and products containing benzene despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective.

31.     Defendants' warranties were made both orally and in writing, and Plaintiffs are no longer in possession of the written materials upon which such warranties were made.

32.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff contracted and suffers from Myelodysplastic Syndrome, and multiple side effects, conditions, illnesses and symptoms caused by Myelodysplastic Syndrome and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection.

33.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

34.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future will suffer economic losses.

35.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and

Case ID: 241001674

medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest and delay damages.

## COUNT III

### PLAINTIFFS VS. EXXON MOBIL, SUNOCO, ASHLAND AND UNOCAL
### STRICT LIABILITY

36.    Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

37.    Defendants are and were, at all times material hereto, in the business of manufacturing, refining, designing, producing, processing, compounding, converting, packaging, selling, distributing, marketing, re-labeling, supplying and/or otherwise placing into the stream of commerce the benzene and benzene-containing products.

38.    The benzene and benzene-containing products were expected to and did reach the Plaintiff and his employers without substantial change in the condition in which they were sold.

39.    The benzene and benzene-containing products were defective when they left the Defendants' possession, custody and control.

40.    Plaintiff and his employers were the intended and foreseeable users of the Defendants' benzene and benzene-containing products, and it was intended by and foreseeable to

Case ID: 241001674

the Defendants that the benzene and benzene-containing products would be used in the manner that the Plaintiff and his employers used them in.

41.     The Defendants' benzene and benzene-containing products were defective because:

a.     They contained benzene and benzene causes cancer, leukemia and other harm to the blood and bone marrow of humans.

b.     They lacked all elements necessary to make them safe for their intended and foreseeable use;

c.     The Defendants failed to take precautions to warn and/or adequately warn Plaintiff and his employers that their benzene-containing products contained benzene;

d.     They lacked warnings and instructions, and or adequate warnings and instructions, of the dangers to human health, including the nature and extent thereof, caused by exposure to benzene and the benzene-containing products, including the risk for contracting cancer, leukemia and other blood and bone marrow disease;

e.     They did not warn or adequately warn Plaintiff and his employers of the reasonably safe, sufficient and necessary safeguards, protective equipment, wearing apparel, appliances and engineering controls to protect them from exposure to benzene and physical harm, including leukemia, caused by working with and around the benzene and benzene-containing products;

f.     There were no warnings or notices, or adequate and sufficient warnings and notices, on the containers in which the benzene and benzene-containing products were sold, contained, delivered and used in conjunction with, or shipping and billing documents, regarding the known or potential risks, dangers and harm therefrom, including contracting lymphohematopoietic disease, and the precautions necessary for use with the benzene-containing products to protect against the risk of dangers to health;

g.     Failed to train and advise, or adequately train and advise, the Plaintiff and his employers of how to adopt and implement a safe, sufficient and proper plan and method to safely handle and use their benzene and benzene-containing products, resulting in the creation of an atmosphere that the Defendants' benzene-containing products were relatively safe to work with and around, handle, come in direct and indirect contact with, inhale, ingest, dermally absorbed and otherwise be exposed to;

23

Case ID: 241001674

h.      Failed to train, communicate, publish, adopt and enforce a safety plan and a safe method of handling and working with their benzene and benzene-containing products;

i.      They failed to recommend methods to improve the work environment;

j.      The Defendants failed to develop alternative products, including products which did not contain benzene;

k.      The Defendants failed to assure that warnings, instructions, advisements, and training reached Plaintiff's employer, Plaintiff and other end users similarly situated, such that Plaintiff and other end users were adequately warned and protected, against the hazards posed by benzene including, as contaminants in, or as ingredients of their benzene-containing products;

l.      The ordinary and foreseeable use of the Defendants' benzene and benzene-containing products, or those benzene-containing products of Defendants which were distributed to Plaintiff's employer, is an intrinsically dangerous and ultra hazardous activity;

m.      The Defendants' benzene and benzene-containing products were also defectively designed in that their hazards outweighed the benefit, if any, of the products' benzene content;

n.      The Defendants' benzene and benzene-containing products were defective in that they failed to meet their consumer's expectations for safety;

o.      Were packaged in a manner that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained;

p.      Contained directions for use that increased the risk for exposure to benzene and increased the amount of benzene exposure end users sustained; and

q.      The Defendants' benzene-containing products were defective in that the Defendants manufactured and sold the same products, or substantially similar products, that did not contain benzene which were used for the same purposes as their benzene-containing products and which were equally effective.

42.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff

contracted and suffered from Myelodysplastic Syndrome, and multiple side effects, conditions,

illnesses and symptoms caused by Myelodysplastic Syndrome and the medical treatments

Case ID: 241001674

necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection.

43.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

44.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff has in the past, continues to and in the future will suffer economic losses.

45.     As the direct and proximate result of the Defendants' acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs prey for judgment from Defendants, individually, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest and delay damages.

<u>**COUNT IV**</u>

<u>**PLAINTIFF VS. EXXON MOBIL, SUNOCO, ASHLAND AND UNOCAL**</u>

<u>**INTENTIONAL TORT – BATTERY**</u>

46.     Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

47.     Defendants committed the intentional tort of battery by causing the Plaintiff's exposure to benzene-containing products and benzene knowing that those exposures would cause

Case ID: 241001674

harm to the Plaintiff.

48.     Defendants knew, foresaw and intended that their benzene and benzene-containing products were used in the manner in which Plaintiff and Plaintiff's employers used them, and that benzene and the benzene-containing products would be released into the atmosphere while using the benzene and benzene-containing products, and Plaintiff and others similarly situated would work with, inhale, ingest, dermally absorb, handle or directly and indirectly come into contact with, and/or otherwise be exposed to benzene, which created a hazardous and unsafe condition and risk to the health of Plaintiff and others similarly situated.

49.     Defendants knew that their benzene and benzene-containing products were inherently defective, ultra-hazardous, dangerous, deleterious, poisonous, carcinogenic, leukemogenic and otherwise highly harmful to the Plaintiff and persons similarly situated.

50.     Defendants knew that their products, identified herein, contained benzene.

51.     Defendants knew that end users, such as the Plaintiff would work with and around, and be exposed to benzene as the result of the use of the Defendants' benzene and benzene-containing products in the course of their work related duties and other activities.

52.     Defendants knew, through information in their possession and control, and other information so obvious to them so as to be imputed to them, that benzene was capable of causing leukemia and other blood and bone marrow disorders, including Myelodysplastic Syndrome, aplastic anemia, leukemia and other blood cancers and blood diseases.

53.     Defendants knew, through information in their possession and control, and other information so obvious to them so as to be imputed to them, that there is no safe level of exposure to benzene.

26

Case ID: 241001674

54.     Defendants were capable of manufacturing, producing and processing the identified products in a manner that eliminated or significantly reduced their benzene content.

55.     Defendants knew, through information in their possession and control, and other information so obvious to them so as to be imputed to them, that their benzene and benzene-containing products placed the Plaintiff, and other end users similarly situated, at a significantly increased risk for contracting aplastic anemia, cancer, leukemia and other blood and bone marrow disorders, including Myelodysplastic Syndrome, aplastic anemia, leukemia, and other blood cancers and blood diseases, as a direct and proximate result of exposure to the benzene and benzene-containing products.

56.     Defendants knew that Plaintiff, his coworkers, and other end users similarly situated, did not know or appreciate that the benzene-containing products contained benzene, or that benzene and the benzene-containing products were capability of causing cancer, leukemia and other blood and bone marrow disorders, including Myelodysplastic Syndrome.

57.     Defendants knew that Plaintiff, his coworkers, and other end users similarly situated, did not know of the proper and necessary personal protective equipment, appliances, wearing apparel, engineering controls, procedures and practices for use in conjunction with the benzene-containing products to prevent or minimize benzene exposure and the risk for contracting cancer, leukemia and other blood cancers and bone marrow disorders, including Myelodysplastic Syndrome.

58.     Defendants knew that their failure to warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' benzene content and capability of causing cancer, leukemia and other blood and bone marrow disorders, including Myelodysplastic

27

Case ID: 241001674

Syndrome, aplastic anemia, leukemia and other forms of blood cancer and blood disease, would act as, and did in fact act as, an inducement for the Plaintiff to continually expose himself to their benzene and benzene-containing products without necessary and proper personal protective equipment, practices and procedures in order to reduce or eliminate benzene exposure and leukemia risk.

59.    Defendants knew that their failures, by intent and omission, to warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' benzene content and capability of causing cancer, leukemia and other blood and bone marrow disorders, including Myelodysplastic Syndrome, aplastic anemia, leukemia and other forms of blood cancer and blood disease, would act as, and did in fact act as, an inducement for the Plaintiff to continually expose himself to benzene and place himself at risk for contracting leukemia.

60.    Defendants knew that their failures to warn, instruct and train the Plaintiff, his employers and coworkers of the proper and necessary personal protective equipment, work practices and procedure to avoid benzene exposure and the risk of contracting cancer, leukemia and other blood and bone marrow disorders, including Myelodysplastic Syndrome, aplastic anemia, leukemia and other forms of blood cancer and blood disease, would act as, and did in fact act as, an inducement for the Plaintiff to continually expose himself to benzene and place himself at risk for contracting leukemia, through the use of their identified products without proper and necessary personal protective equipment, work practices and procedures.

61.    Defendants knew that their failures, by intent and omission, to warn, instruct and train the Plaintiff, his employers and coworkers would cause Plaintiff to aggravate his condition and situation, by preventing him from avoiding further exposure to these benzene-containing

Case ID: 241001674

products, taking proper precautions to minimize or eliminate any risk from such exposure, seeking medical opinions regarding the true state of his medical condition or changing the nature of his job description or areas of work, so he would have no contact with Defendants' benzene and benzene-containing products.

62.    Defendants knew that properly and adequately warning, instructing and training the Plaintiff, his employers, coworkers and the general public of the benzene-containing products' benzene content and capability of causing cancer, leukemia and other blood and bone marrow disorders, including Myelodysplastic Syndrome, aplastic anemia, leukemia and other forms of blood cancer and blood disease would be detrimental to their business interests, as such would deter the purchase and use of said products, by the Plaintiff, his employers, coworkers and the general public.

63.    Despite all of this knowledge, Defendants willfully and wantonly, through affirmative acts or omissions:

  a.    Manufactured, produced, processed, marketed, sold and distributed to the Plaintiff, his employers and coworkers, products which contained a known carcinogenic and leukemogenic compound, benzene;

  b.    Did not eliminate or minimize the benzene content of the identified benzene-containing products;

  c.    Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the identified products' benzene content;

  d.    Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the benzene and benzene-containing products' ability to cause cancer, leukemia and other blood and bone marrow disorders, including Myelodysplastic Syndrome;

  e.    Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the insidious, highly hazardous and deleterious nature of benzene;

Case ID: 241001674

f.     Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers that there is no safe level of exposure to benzene;

g.     Did not warn, instruct, train and advise the Plaintiff, his employers and coworkers of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and leukemia risk;

h.     Did not affix labels or warnings upon the identified products, their containers or shipping documents the warn, instruct, train and advise the Plaintiff, his employers and coworkers of the products' benzene content, and their cancer and leukemia risk;

i.     Did not affix labels or warnings upon the identified products, their containers or shipping documents the warn, instruct, train and advise the Plaintiff, his employers and coworkers that there is no safe level of exposure to benzene;

j.     Did not affix labels or warnings upon the identified products, their containers or shipping documents the warn, instruct, train and advise the Plaintiff, his employers and coworkers of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and leukemia risk;

k.     Did not post signs, warnings or other statements upon the premises of the Plaintiff's employers warn, instruct, train and advise the Plaintiff, his employers and coworkers of the products' benzene content, and their cancer and leukemia risk;

l.     Did not post signs, warnings or other statements upon the premises of the Plaintiff's employers warn, instruct, train and advise the Plaintiff, his employers and coworkers that there is no safe level of exposure to benzene;

m.     Did not post signs, warnings or other statements upon the premises of the Plaintiff's employers warn, instruct, train and advise the Plaintiff, his employers and coworkers of the necessary and proper personal protective equipment, practices and procedures to minimize or prevent benzene exposure and leukemia risk;

n.     Did not train and advise Plaintiff, his employers and coworkers of how to adopt and implement a safe, sufficient and proper plan and method to properly handle and use their benzene and benzene-containing products, resulting in the creation of an atmosphere at Plaintiff's employer, that the Defendants' benzene-containing products were relatively safe to handle, come in direct and indirect contact with, inhale, ingest and dermally absorb; o. Sacrificed the health and safety of the workers and other end users of their benzene-containing products in order to further the Defendants' economic advantage, convenience and profit;

Case ID: 241001674

p.      Continued to manufacture and sell products containing benzene despite fully knowledge that there were safer alternative products;

q.      Continuing to manufacture and sell products containing benzene despite actually manufacturing and selling products that did not contain benzene which were used for the same purposes as their benzene and benzene-containing products and which were equally effective;

r.      Defendants committed fraud by withholding information of the health hazards of benzene and their products and by making misrepresentations of material fact to co-Defendants, Plaintiff, his coworkers and employer;

s.      Plaintiff, his employers and coworkers relied upon the Defendants for information and warnings regarding the products' health hazards and cancer risk and relied upon the Defendants to manufacture and sell reasonably safe products meeting consumers' expectations of safety;

t.      Defendants possessed knowledge and information of the health hazards of benzene, including its ability to cause fatal blood poisoning, cancer, leukemia, DNA damage, chromosome damages, and other damage, disease and cancer to the blood and bone marrow.

u.      Defendants withheld and otherwise failed to disclose their knowledge and information of the health hazards of benzene, including its ability to cause fatal blood poisoning, cancer, leukemia, DNA damage, chromosome damages, and other damage, disease and cancer of the blood and bone marrow.

v.      Defendants knew that the warnings and information they supplied for their benzene-containing products were untrue, did not believe it to be true, were indifferent as to whether it was true, or because of special circumstances had a duty to know whether the statements were true.

w.      A special relationship exists between the Plaintiff, his employers, the Defendants, as well as between Defendants which manufactured ingredients and co-Defendants which manufactured products using those ingredients.

64.      Defendants acts and omissions were unreasonable in their character, and made in disregard of a risk known to them or so obvious them that they must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.

31

Case ID: 241001674

65.     Defendants acts and omission acts and omissions demonstrated a conscious indifference to their consequences, namely causing the Plaintiff to contract Myelodysplastic Syndrome and other injuries identified herein.

66.     Defendants intended to cause harmful conduct to the Plaintiff through causing benzene exposure, and did so with the knowledge, belief and intent that such exposure could cause the Plaintiff's to contract leukemia.

67.     Defendants' intentional conduct in causing the Plaintiff to be exposed to benzene, did in fact cause physical harm to the Plaintiff by directly and proximately causing him to contract Myelodysplastic Syndrome and other injuries and damages as set forth herein.

68.     As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing, purposeful and intentional acts and omissions, Plaintiff contracted and suffered from Myelodysplastic Syndrome and multiple side effects, conditions, illnesses and symptoms caused by Myelodysplastic Syndrome and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection and progression of his cancer.

69.     As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing, purposeful and intentional acts and omissions, Plaintiff was prevented from engaging in those activities from which he derives life's pleasures.

70.     As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing, purposeful and intentional acts and omissions, Plaintiff has in the past, continues to and in the future will suffer economic losses.

71.     As the direct and proximate of the aforesaid willful, deliberate, wanton, knowing,

Case ID: 241001674

purposeful and intentional acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses, which expenses and loses may continue to accrue.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars, ($50,000), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest, and delay damages.

<u>**COUNT V**</u>

<u>**PLAINTIFFS VS. EXXON MOBIL, SUNOCO, ASHLAND AND UNOCAL**</u>

<u>**INTENTIONAL TORT – FRAUD**</u>

72.     Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

73.     In researching, testing, manufacturing, distributing, labeling, and marketing benzene and the benzene-containing products, and through their membership and affiliation with various industry and trade organizations, defendants, and each of them, did so with conscious disregard for the safety of the users of said carcinogen-containing products, in that said defendants had prior knowledge that benzene is an insidious blood and bone marrow poison, that there is no safe level of exposure to benzene and that there was a high risk of injury or death resulting from exposure to benzene and benzene-containing solvents, including, but not limited to, leukemia, aplastic anemia, and other blood and other bone marrow diseases. Said knowledge was obtained,

Case ID: 241001674

in part, from scientific studies and medical data to which defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of, said defendants, and which knowledge was obtained by said defendants on or before 1948. Despite this knowledge, the defendants acted to manipulate public information and knowledge in order to give the impression that benzene and benzene-containing products were safe and to prevent the disclosure of the information available to the defendants regarding the true and full nature of the health hazards of benzene and benzene-containing products.

74.     On or before 1948, said defendants were aware that users of benzene and benzene-containing solvents, as well as members of the general public who would be exposed to benzene and benzene-containing solvents, had no knowledge or information indicating that benzene and benzene-containing solvents could cause injury and said defendants knew that users of benzene and benzene-containing solvents, as well as members of general public who were exposed to benzene and benzene-containing solvents, would assume, and in fact did assume, that exposure to benzene and benzene-containing solvents was safe, when, in fact, said exposure was extremely hazardous to human life.

75.     Exxon Mobil knew by no later than 1948 that benzene causes leukemia by virtue of its membership in the American Petroleum Institute and receipt of the 1948 Toxicological Review on Benzene which stated that there were reasonably well reported cases of leukemia from exposure to benzene, that the only safe concentration of benzene exposure was zero and that listed gasoline as the first product that was a source of benzene exposure

76.     Mobil Oil knew by no later than the 1950s that exposure to benzene causes cancer.

77.     Exxon Mobil knew that if the public, gasoline station employees and gasoline end

Case ID: 241001674

users were aware of the benzene content of gasoline and benzene ability to cause leukemia, aplastic anemia and other blood cancers and blood diseases they would be deterred from working at gasoline service stations and fro purchasing gasoline.

78.    Exxon Mobil knew that if the public, gasoline station employees and gasoline end users were aware of the benzene content of gasoline and benzene ability to cause leukemia, aplastic anemia and other blood cancers and blood diseases regulatory agencies would require the reduction or removal of benzene from gasoline, proper warnings of benzene's health hazards and the implementation of exposure controls to protect the public from exposures to benzene, all of which Exxon Mobil knew would cost it significant sums of money, decreasing its profitability and threatening its business interests.

79.    Exxon Mobil knew that emissions from its gasoline and exhaust from gasoline powered internal combustion engines caused environmental air pollution that was both detrimental to public health by causing disease and detrimental to the environment by causing warming of the atmosphere.

80.    Exxon Mobil knew that vapor recovery systems were capable of reducing emissions from gasoline that contributed to environmental pollution that causes disease and global warming.

81.    Exxon Mobil decided not to use vapor recovery systems in order to save money and in order to not alert the public to the dangers that gasoline emissions posed to the environment and the public's health.

82.    Exxon Mobil concealed its knowledge of benzene's health hazards and environmental pollution caused by gasoline emissions because it knew and intended that the public, governmental agencies and end users would rely upon their perception of a lack of health

Case ID: 241001674

hazards and environmental pollution when using and permitting the use of gasoline, including without warning and without vapor recovery systems.

83.     Exxon Mobil marketed gasoline in a manner that falsely gave the impression that gasoline was clean and harmless to human health and the environment.

84.     Exxon Mobil concealed its knowledge of benzene's health hazards and gasoline's detrimental impact on the environment and public health in order to preserve its own profits and financial interests, all at the expense of the Plaintiff's health and the public's health.

85.     Exxon Mobil concealed its knowledge of benzene's health hazards in order to deter the regulation of gasoline and benzene in gasoline in the United States because it was aware that countries in Europe, Asia, African and South America would implement similar regulations as those in the United States, thereby increasing the costs and decreasing the profitability of Exxon Mobil.

86.     Exxon Mobil acted in conjunction with the American Petroleum Institute, Western States Petroleum Association and other oil companies to suppress the public's knowledge of the health hazards of benzene in gasoline and gasoline's role to contributing to air pollution and global warming.

87.     Exxon Mobil retaliated against at least one of its employees, Myron Mehlman, Ph.D. by firing him after he publicly disclosed the hazards of benzene in its gasoline.

88.     Sunoco knew by no later than 1948 that benzene causes leukemia by virtue of its membership in the American Petroleum Institute and receipt of the 1948 Toxicological Review on Benzene which stated that there were reasonably well reported cases of leukemia from exposure to benzene, that the only safe concentration of benzene exposure was zero and that listed gasoline

Case ID: 241001674

as the first product that was a source of benzene exposure

89.    Sunoco knew by no later than the 1950s that exposure to benzene causes cancer.

90.    Sunoco knew that if the public, gasoline station employees and gasoline end users were aware of the benzene content of gasoline and benzene ability to cause leukemia, aplastic anemia and other blood cancers and blood diseases they would be deterred from working at gasoline service stations and fro purchasing gasoline.

91.    Sunoco knew that if the public, gasoline station employees and gasoline end users were aware of the benzene content of gasoline and benzene ability to cause leukemia, aplastic anemia and other blood cancers and blood diseases regulatory agencies would require the reduction or removal of benzene from gasoline, proper warnings of benzene's health hazards and the implementation of exposure controls to protect the public from exposures to benzene, all of which Sunoco knew would cost it significant sums of money, decreasing its profitability and threatening its business interests.

92.    Sunoco knew that emissions from its gasoline and exhaust from gasoline powered internal combustion engines caused environmental air pollution that was both detrimental to public health by causing disease and detrimental to the environment by causing warming of the atmosphere.

93.    Sunoco knew that vapor recovery systems were capable of reducing emissions from gasoline that contributed to environmental pollution that causes disease and global warming.

94.    Sunoco decided not to use vapor recovery systems in order to save money and in order to not alert the public to the dangers that gasoline emissions posed to the environment and the public's health.

Case ID: 241001674

95.     Sunoco concealed its knowledge of benzene's health hazards and environmental pollution caused by gasoline emissions because it knew and intended that the public, governmental agencies and end users would rely upon their perception of a lack of health hazards and environmental pollution when using and permitting the use of gasoline, including without warning and without vapor recovery systems.

96.     Sunoco marketed gasoline in a manner that falsely gave the impression that gasoline was clean and harmless to human health and the environment.

97.     Sunoco concealed its knowledge of benzene's health hazards and gasoline's detrimental impact on the environment and public health in order to preserve its own profits and financial interests, all at the expense of the Plaintiff's health and the public's health.

98.     Sunoco concealed its knowledge of benzene's health hazards in order to deter the regulation of gasoline and benzene in gasoline in the United States because it was aware that countries in Europe, Asia, African and South America would implement similar regulations as those in the United States, thereby increasing the costs and decreasing the profitability of Exxon Mobil.

99.     Sunoco acted in conjunction with the American Petroleum Institute, Western States Petroleum Association and other oil companies to suppress the public's knowledge of the health hazards of benzene in gasoline and gasoline's role to contributing to air pollution and global warming.

100.    Defendant Ashland LLC knew by no later than 1948 that benzene causes leukemia and that the only safe concentration of exposure to benzene is zero by virtue of its membership in the American Petroleum Institute and receipt, or availability to them, of the 1948 Toxicological

Case ID: 241001674

Review on Benzene.

101.    Despite its knowledge of benzene causing cancer and fatal blood disease, Ashland did not disclose its knowledge and information that benzene causes cancer and fatal blood disease.

102.    Ashland withheld and concealed its knowledge of benzene's health hazards, including its ability to cause cancer and fatal blood disease, with the intent, expectation and foreseeability that Plaintiff, his employers and others similarly situated, as well as its customers, would rely upon its statements and omissions in determining whether to work upon its premises and use its carcinogen-containing products.

103.    Defendant Unocal knew by no later than 1948 that benzene causes leukemia and that the only safe concentration of exposure to benzene is zero by virtue of their membership in the American Petroleum Institute and receipt, or availability to them, of the 1948 Toxicological Review on Benzene.

104.    Despite its knowledge of benzene causing cancer and fatal blood disease, Unocal did not disclose its knowledge and information that benzene causes cancer and fatal blood disease.

105.    Prior to Plaintiff's first exposure, Union Oil Company of California and its predecessor American Mineral Spirits Company including their officers, directors, and/or managing agents, knew through information in its possession and/or readily available and imputable to it, that low-level benzene exposure was toxic causing blood and bone marrow damage, that benzene and benzene containing liquid should only be used in closed systems, and that respiratory protection, skin protection and engineering controls were necessary to prevent benzene exposure due to its toxicity.

106.    By the time of the Plaintiff's first exposure, Union Oil Company of California and

39

Case ID: 241001674

its predecessor American Mineral Spirits Company including their officers, directors, and/or managing agents, considered benzene to be a carcinogen with its effects on the blood and bone marrow.

107.    Despite this knowledge, Union Oil Company of California and its predecessor American Mineral Spirits Company continued to manufacture and sell benzene and benzene-containing products, including those identified herein, without warning of benzene's ability to cause blood and bone marrow damage and cancer or the need to use respirators and skin protection when working with solvents containing benzene. Through its acts and omissions, this Defendant demonstrated a reckless indifference to the rights and safety of the users of its products. this Defendant also acted fraudulently in that it withheld its information on the health hazards of benzene, with the knowledge or belief that this would induce its customers to use this Defendant products and/or not deter them from using this Defendant products, when they otherwise would have been deterred from purchasing the products had they been warned of the health hazards of benzene. These acts and omission were known and/or approved by this Defendant's officers, directors, and/or managing agents, and/or knowledge thereof was readily available that it was imputable to them.

108.    Prior to and during the Plaintiff's exposure to Union Oil Company of California and its predecessor American Mineral Spirits Company's products, this Defendant knew through information in its possession and/or readily available and imputable to it, that benzene causes cancer and damage to the blood forming system causing severe illness and death.

109.    Prior to and during the Plaintiff's exposure to Union Oil Company of California and its predecessor American Mineral Spirits Company's products, this Defendant knew through

Case ID: 241001674

information in its possession and/or readily available and imputable to it, that its products contained benzene and that those working with and around its products would be exposed to benzene.

110.    Defendants, directly and through their membership in trade organizations, hired medical professionals to submit misleading information, statements and opinions to the United States Occupational Safety and Health Administration, California Air Resourced Board and U.S. Environmental Protection Agency in order to prevent the reduction of benzene exposure levels in the workplace, ambient air and the benzene content of products, such as those the Plaintiff was exposed to. Delays in the reduction of the Permissible Exposure Levels for benzene in the workplace and delays in the implementation of environmental regulations, including in the use of vapor recovery systems at gasoline service stations, resulted in numerous unnecessary deaths from benzene exposure.

111.    Defendants manufactured and sold, or had readily available to them, products and product ingredients which did not contain benzene or any appreciable amounts of benzene, yet choose to continue to manufacture and sell the benzene-containing versions of their products.

112.    Defendants, have conducted or hired others to conduct studies on the amount of benzene exposure caused by their products that have manipulated the data and circumstances of the studies so as to give the false impression that their products do not present a benzene exposure hazard, knowing that the United States government and others would rely on these studies when making decisions with respect to worker benzene exposures.

113.    Defendants intentionally, and with intent to defraud the Plaintiff and others similarly situated by concealing a material fact known to the defendants, did not disclose that their

Case ID: 241001674

products would expose the product user and those around the user to a chemical, to wit benzene, which was known to cause MDS, leukemia, cancer, and severe and potentially fatal damage and illness to the blood forming system. By concealing the risk of leukemia and damage to the blood forming system from the Plaintiff, defendants deprived the Plaintiff of his right to know toxic contents of the defendants' products, his right to control his health and his right to protect himself from exposure to toxic chemicals, including by not using the products at all.

114. Defendants, knew that their products would expose the Plaintiff, and others similarly situated, to benzene, and that this exposure would place the Plaintiff at an increased risk of contracting cancer, leukemia, and death. Despite this knowledge, the defendants, acted in conscious disregard of the rights, safety, and health of those working with and around their products, including the Plaintiff.

115. The conduct of defendants, jointly and severally as described above was willful, wanton, knowing, purposeful and intentional, as were their failures and/or omissions, as it related to Plaintiff, and were of such degree and magnitude that they rose to the level of conduct exhibiting a reckless indifference to the health, safety, rights and welfare of Plaintiff.

116. With this knowledge, Defendants opted to manufacture and distribute benzene and benzene-containing products without attempting to protect users from, or warn users of, the high risk of injury or death resulting from exposure to said benzene and benzene-containing products. Rather than attempting to protect users from, or warn users of, the high risk of injury or death resulting from exposure to said benzene and benzene-containing products, said defendants intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from members of the general public, thus impliedly representing

Case ID: 241001674

to members of the general public that said benzene and benzene-containing products were safe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representation, and with knowledge, intent and/or reasonable expectation that the product users would rely upon their representations.

117.    The above referenced conduct of Defendants, was motivated by the financial interest of said defendants in the continuing, uninterrupted distribution and marketing of said benzene and benzene-containing products. In pursuance of said financial motivation, said defendants consciously disregarded the safety of the users of said benzene and benzene-containing products, and were, in fact, consciously willing to permit said benzene and benzene-containing products to cause injury to users therefore, including Plaintiff.

118.    The above referenced conduct of Defendants, was and is willful, malicious, outrageous, and in conscious disregard and indifference to the safety of users of said carcinogen-containing products, including Plaintiff. Plaintiff therefore, for the sake of example and by way of punishing said defendants, seeks punitive damages.

119.    Plaintiff and others around him relied upon the fraudulent representations, misrepresentations and omissions made by the Defendants and did so to the Plaintiff's detriment causing him harmful benzene exposure and injury.

120.    As the direct and proximate result of the aforesaid acts and omissions, Plaintiff contracted and suffered from Myelodysplastic Syndrome, and multiple side effects, conditions, illnesses and symptoms caused by Myelodysplastic Syndrome and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection.

Case ID: 241001674

121. As the direct and proximate of the aforesaid acts and omissions, Plaintiff was prevented from engaging in those activities from which he derived life's pleasures.

122. As the direct and proximate of the aforesaid acts and omissions, Plaintiff has in the past, continues to and in the future will suffer economic losses.

123. As the direct and proximate result of the aforesaid acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines, to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars, ($50,000), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest, and delay damages.

<u>**COUNT VII**</u>

<u>**PLAINTIFFS VS. FIRESTONE AND EASTERN CAR**</u>

<u>**EMPLOYER NEGLIGENCE**</u>

124. Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

125. Plaintiff was an employee of Firestone.

126. Plaintiff was an employee of Eastern Car.

127. Employer Defendants owed the Plaintiff a heightened duty of care to provide him with a safe workplace that was free from causes of occupational diseases.

128. Employer Defendants had a duty to identify hazards in the workplace and eliminate

44

Case ID: 241001674

or control those hazards so as to prevent injury and disease to their employees, including the Plaintiff.

129.    Employer Defendants had a duty to educate and train the Plaintiff as to the existence of hazardous conditions in their workplaces.

130.    Employer Defendants had a duty to review and consider information provides by the suppliers of benzene, rubber solvents, gasoline, solvents and other chemicals use in their workplaces as part of their responsibility to identify and understand the hazards present in the workplace.

131.    Employer Defendants had a duty to use engineering controls, personal protective equipment, air monitoring, blood tests, urine tests and physical examinations to protect their employees from exposures to chemicals in the workplace, including benzene.

132.    Employer Defendants were negligent, unreasonable and failed to meet their duty to the Plaintiff because they:

    a.    Used benzene, benzene-containing rubber solvents, gasoline and other solvents in the workplace which caused their employees to be exposed to benzene;

    b.    Failed to use engineering controls to prevent exposures to benzene in the workplace;

    c.    Failed to provide the Plaintiff and his coworkers with respiratory protection, gloves, protective clothing and other personal protective equipment that was necessary to reduce or prevent his exposures to benzene;

    d.    Failed to conduct air monitoring to ascertain the existence and concentration of chemicals, including benzene in the workplace air;

    e.    Failed to conduct blood tests, urine tests and physical examinations on their employees so as to detect and prevent harm caused by exposure to benzene to their bodies;

Case ID: 241001674

f.      Failed to use any or adequate ventilation to eliminate or reduce the hazards of benzene exposure in the workplace;

g.      Failed to take precautions to educate and train, or adequately educate and train, the Plaintiff and his coworkers of the hazards associated with benzene exposure and how to protect themselves against those hazards;

h.      Failed and omitted to take all reasonable, necessary, proper and prudent measures to prevent the Plaintiff's exposures to benzene and injury;

i.      Failed to comply with applicable regulations, standards and codes relating to occupational safety and health, ventilation and engineering controls; and,

j.      Failed to comply with all federal, state, local and trade statutes, codes, regulations and ordinances relating to exposure to benzene, solvents and gasoline, including 29 CFR 1910.1200; 29 CFR 1910.1028; and, 49 CFR Parts 100-199.

133.    Firestone's acts and omissions demonstrated a reckless disregard for the rights and safety of the Plaintiff and other employees similarly situated.

134.    As the direct and proximate result of the aforesaid acts and omissions, Plaintiff contracted and suffered from Myelodysplastic Syndrome, and multiple side effects, conditions, illnesses and symptoms caused by Myelodysplastic Syndrome and the medical treatments necessitated thereby, which caused him pain, suffering, disability, disfigurement, deformity, impairment, mental anguish, anxiety, humiliation, and increased susceptibility to infection.

135.    As the direct and proximate of the aforesaid acts and omissions, Plaintiff was prevented from engaging in those activities from which he derived life's pleasures.

136.    As the direct and proximate of the aforesaid acts and omissions, Plaintiff has in the past, continues to and in the future will suffer economic losses.

137.    As the direct and proximate result of the aforesaid acts and omissions, Plaintiff was required to spend various sums of money for medical treatments, hospitalizations and medicines,

Case ID: 241001674

to treat Plaintiff's disease and injuries, and has incurred additional economic expenses and losses.

**WHEREFORE**, for all of the foregoing reasons, Plaintiffs pray for judgment from Defendants, individually, jointly and severally in an amount in excess of fifty thousand dollars, ($50,000), together with such other and further relief as this Court deems just and appropriate, under the circumstances, including punitive damages, costs, interest, and delay damages.

<u>**COUNT VII**</u>

<u>**JANET GENTILE VS. ALL DEFENDANTS**</u>

<u>**LOSS OF CONSORTIUM**</u>

138.    Plaintiffs hereby adopt and incorporate by reference each and every statement and averment contained in each of the foregoing paragraphs, as if each of said paragraphs were set forth herein with particularity.

139.    At times material hereto, including from the date of Dominic Gentile's diagnosis with Myelodysplastic Syndrome to the present, Janet Gentile is and was married to Dominic Gentile.

140.    As the result of the injuries caused by the Defendants to Dominic Gentile, Janet Gentile has suffered a loss of consortium.

141.    Janet Gentile has lost, continues to lose and in the future will lose the love, companionship, friendship, society, services, emotional support and financial support provided by her husband, Dominic Gentile.

142.    Janet Gentile has incurred, continues to incur and in the future will incur significant medical and other expenses and costs to care for and treat Dominic Gentile's injuries, and to replace the services and support which Dominic Gentile would have provided but for the illness

Case ID: 241001674

and injuries directly and proximately caused by the Defendants' wrongful conduct.

**WHEREFORE**, Plaintiffs demands judgment in their favor and against the Defendants, jointly and/or severally, in amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), together with such other and further relief as this Court deems just and appropriate under the circumstances including compensatory damages, interest, costs and delay damages.

Respectfully submitted,

**LOCKS LAW FIRM**

**DATED:** October 15, 2024          **By:**     /s/ Andrew J. DuPont
                                                  **ANDREW J. DUPONT, ESQUIRE**
                                                  **Attorney for Plaintiffs**

Case ID: 241001674

## <u>VERIFICATION</u>

Dominic Gentile and Janet Gentile, Plaintiffs above, being duly sworn according to law, do depose and state that the allegations in the enclosed Civil Action Complaint are true and correct to the best of our knowledge, information and belief. We realize that this verification is taken pursuant to 42 Pa. C.S.A Section 4904, relating to unsworn falsification to authorities.

DATED: _____ 10 / 14 / 2024

_____
DOMINIC GENTILE

DATED: _____ 10 / 14 / 2024

_____
JANET GENTILE